9m 418
97   508

CAVEAT.                     **Hart** *vs* **Rogers.**

*Case* 94.          ERROR TO THE FAYETTE CIRCUIT.

                  *Caveats.  Rivers.  Vacant lands.*

*June 14.*    CHIEF JUSTICE MARSHALL delivered the opinion of the Court.

HART having obtained a warrant from the proper of-
*Case stated.*  ficer of Madison county, under the acts of 1835 and
1837, "to appropriate the vacant lands north and east
of the Tennessee river, to the counties in which they
lie," caused it to be surveyed so as to cover a portion of
the bed of the Kentucky river to low water mark on
each side, in or between the counties of Fayette and
Madison.   Rogers afterwards, under a warrant regular-
ly obtained in the county of Fayette, caused a survey
to be made covering the same land, and filed a caveat to
prevent the issuing of a patent on the survey of Hart.
The Court, by its decree, determined the claim of each
to be valid to the middle of the stream, and that patents
should issue accordingly.  And Hart seeks a reversal of
the decree.

Upon examination of the statutes defining the boun-
daries of Fayette and Madison counties : (1 *Litt. Law
of Kentucky*, 626–7.)  We are of opinion that if any
part of the Kentucky river is included within the county
of Madison, it is not so included farther than to the mid-
dle of the stream, along that part of the river of which
the margin is within that county.  This being so, the
first section of the act of 1835, (3 *Stat. Law*, 386,) vest-
ing in the several County Courts the vacant lands north
and east of the Tennessee river, and lying within their
respective counties, certainly did not vest in the County
Court of Madison, any part of the river beyond the
middle of the stream.  The power given by the subse-
quent section, to each County Court or to the several
County Courts, to sell and take steps for the appropri-
ation of land by individuals, is based upon the grant of
land by the Court, and its exercise by each Court is lim-
ited to the land vested in that Court by the first section

of the act. Any person desiring to purchase any of the vacant land described in the first section, is by the second section required to apply to the Court of the county in which the land lies, and agree with the Court for the price. The Court is to order a survey of the quantity sold—which being made and returned by the county surveyor or his deputy, a copy of it certified from the record of the Court, authorized the issuing of a patent by the Register. And the third section makes the proceeds of said lands a fund for the improvement of the roads and bridges in the counties respectively, that is, in the respective counties in which the lands lie. The act of 1837, (3 *Stat. Law*, 388,) transfers the business or agency of selling, from the County Courts to county treasurers, to be chosen by the respective Courts. But the County Courts are directed to fix, by an order of record, the price of the vacant land within their respective counties, to be the same for all the land in the county, and not to be below five cents an acre. And any person wishing to purchase, is directed to apply to *the county* treasurer, &c., whose receipt is to be recorded by *the County* Court Clerk, and his warrant will authorize the surveyor of *the county* to make the survey on which the patent is to issue.

The statement of these provisions is sufficient without comment, to show that whether we regard the letter or the general scope and object of these statutes, the rights and powers conferred by them upon the several County Courts and their officers, are strictly local or territorial, and that under these statutes no right can be derived either from a County Court or a County Treasurer, to land not lying within their own county.

*The statutes of Kentucky vesting the vacant lands in the county courts for the improvement of roads, bridges, &c., gives no authority to the holder of such warrant to appropriate vacant lands in any other county than that granting the warrant.*

We are referred to a statute of 1808, (1 *Stat. Law,* 885,) entitled, "an act giving concurrent jurisdiction to the County and Circuit Courts in certain cases," which provides in substance, that where a river, &c. is the boundary between two counties, the Circuit and County Courts, Judges, Justices, and all circuit and county officers, (within each county,) shall have concurrent jurisdiction over such river, &c., to all intents and purposes as if such river, &c., was within the body of such

Circuit or County. And it is argued that as the Kentucky river runs between the counties of Madison and Fayette, forming a common boundary, the Courts of the two counties must have the same, that is, coextensive and concurrent powers over that part of the river and its bed, which lies between the two counties; and conceeding or assuming that the power of appropriating the bed of the river is in the Courts or officers of either or both of the adjacent counties, it is contended that by force of the act of 1808, it is a concurrent power belonging equally to both, and that the consequence must be that the prior exercise of the power by the Court or officers of either county precludes its subsequent exercise over the same land by the other.

*The act of 1808, giving jurisdiction to the courts of either county over the navigable rivers which may divide counties applies to criminal and civil cases alone, not to the right to appropriate lands.*

But the act of 1808 obviously relates mainly to the jurisdiction of Courts in civil and criminal cases, and to the acts of officers in furtherance of that jurisdiction. And if the import of the word jurisdiction as there used, may be somewhat more extensive than this, we are satisfied that it would be carrying the statute beyond its scope and intention, to apply it to proprietory rights vested in the counties or the County Courts for the use of their counties, or to extend it to powers vested in these Courts or their officers, merely as a consequence of such proprietory right, and to effectuate them for the benefit of the county. It would also be contrary to the letter and objects of the acts of 1835 and 1837, to construe them as giving a concurrent right of property or of appropriation in regard to the same land, to the Courts or officers of two different counties. It is admissible, and often proper, to construe a later statute by a former one. But unless they are in *pari materia*, the comparison is of but little avail, and even when they are on the same subject, the latter act in case of inconsistency, must prevail. The later acts now in question, give to the several County Courts exclusive property in the vacant lands within their respective counties, and vest in them respectively, and in their respective officers the exclusive right of selling, and of thus authorizing or commencing the appropriation of the same lands. They did not intend that in any case there should

be a conflict of right, nor that it should depend upon the pleasure of the person desiring to purchase, to determine whether the price of the land should go to the benefit of one county or another, nor that any Court should either fix or receive the price of land not within its county.

We cannot, therefore, admit that the act of 1808 can be so applied to the subject, as in any case to convert this exclusive right into a concurrent right. And indeed we think the act of 1808 has no bearing upon the acts of 1835 and 1837, or upon any question of right or power arising under them. If there can be any case of concurrent power under these acts, it must arise not from the application of the act of 1808, but from the fact that the same land is included within the boundaries of two counties, and is therefore by the act of 1835, literally vested in both. What should be the consequence of such a state of case we need not inquire. Since the county of Madison does not extend across the Kentucky river at any place, but if it includes any part of it, extends only to the middle of the stream, and since the Court or officers of that county having no authority under the acts of 1835 and 1837, to sell land not within the county, could not authorize the appropriation of the bed of the river beyond the middle of the stream, it follows that the attempt by Hart to survey and appropriate the bed of the river entirely across the stream to low water mark on the opposite side, under a warrant from the Clerk of the County Court of Madison, founded on a receipt of the treasurer of that county, is not authorized by the acts of 1835 and 1837, and being without the sanction of any law was utterly illegal. Such warrant could at most authorize the survey and appropriation of the land, or bed of the river on the Madison side to the middle of the stream. And as the land from the middle of the stream to the Fayette shore, is as certainly within that county, and as certainly subject to a sale and appropriation by and under its officers, as the adjoining land extending to the Madison shore is within this last county, it follows that the warrant from Fayette obtained by Rogers, is as valid

and effectual authority for the survey and appropriation of the bed of the river from the Fayette side to the middle of the stream, as the warrant of Hart is for the survey and appropriation from the middle of the stream to the Madison shore. And if neither county extends beyond the middle of the stream, neither warrant affords any authority for the survey beyond that limit. If then, the middle of the stream be the common boundary of the two counties, and if the act of 1835, vesting the vacant lands in the County Courts, is to be understood as applying to the bed of the Kentucky river, and subjecting it to private appropriation, then each of these surveys being valid so far as it is within the county under whose authority it was made, and each being invalid for so much as is out of that county, there can be no doubt that as the claim of Rogers was to that extent valid notwithstanding the prior survey of Hart, Rogers had a right to file his caveat to prevent the issuing of a patent to Hart, so far as it was illegal, and covered his own legal survey. And on this hypothesis, the decree limiting the right of each to the middle of the stream, and allowing each to obtain a patent up to that boundary, was proper.

The question whether the bed of the Kentucky river, is subject to private appropriation under the acts of 1835 and 1837, is not free from difficulty, and the statutes defining the boundaries of the counties of Madison and Fayette, do not conclusively repel the construction which would limit each county to low water mark on its own side, or that which would extend the county of Fayette across the river to low water mark on the Madison side. But as it is entirely certain that the county of Madison does not extend beyond the middle of the stream, and therefore, that the claim of Hart cannot be valid to a greater extent, and as it is equally certain that if Hart's claim is valid even to that extent, on the one side, the claim of Rogers is valid to a like extent on the other side of the middle of the stream, and that any admissible principle or construction which defeat the claim of Rogers, would also make that of Hart wholly illegal, we do not feel bound to make the

*The bed of the Kentucky river between the counties of Madison and Fayette, if vacant to the middle of the stream, is subject to be appropriated by warrant from the county courts of the counties respectively.*

doubt which each party disavows, and which equally affects both claims, operate to the destruction of the one, and the establishment of the other. And especially as we are inclined to the opinion that the middle of the stream should be regarded as the territorial boundary of the two adjoining counties, that the vacant land up to that boundary is therefore vested by the letter of the act of 1835, in the respective County Courts, and that the doubt as to the intention of the Legislature to vest the bed of the river in these Courts, arising from the nature of the public rights attaching to it as a public navigable river, the improvement of which had been undertaken by the States, may be satisfied by construing the act of 1835, and the appropriations authorized by it, as being subject to these public rights, and as conferring no right inconsistent with them.

Wherefore, the decree is affirmed.

*Attwood and Carr* for plaintiff; *Robinson & Johnson* for defendant.